Linde v Charles B. Chrystal Co., Inc (2026 NY Slip Op 50338(U))

[*1]

Linde v Charles B. Chrystal Co., Inc

2026 NY Slip Op 50338(U)

Decided on March 16, 2026

Supreme Court, New York County

Schumacher, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 16, 2026
Supreme Court, New York County

Eileen Linde, as Administratrix for the 
 Estate of STUART LINDE and EILEEN LINDE, Plaintiffs,

againstCharles B. Chrystal Co., Inc et al., Defendants.

Index No. 190127/2023

Weitz & Luxenberg, P.C. (Jason P. Weinstein of counsel), for plaintiffs.Goldberg Segalla LLP (David E. Rutkowski of counsel) for defendant Bristol-Myers Squibb Company.

Eric Schumacher, J.

The following e-filed documents, listed by NYSCEF document number (Motion 012) 333, 334, 335, 336, 337, 338, 339, 340, 341, 342, 343, 344, 345, 346, 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 372, 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 403, 404, 405, 406, 407, 408, 409, 410, 411, 412, 413, 414, 415, 416, 417, 418, 419, 420, 421, 422, 423, 430, 431, 432, 433, 434, 435, 447 were read on this motion to/for JUDGMENT - SUMMARY.
Motion by defendant Bristol Myers Squibb Company pursuant to CPLR 3212 for summary judgment dismissing the complaint and all cross claims granted to the extent all cross claims are dismissed and otherwise denied.BACKGROUNDPlaintiff, Stuart Linde, was diagnosed with pleural mesothelioma in February 2023 and subsequently died of his asbestos-related disease in June 2023. Plaintiffs commenced this toxic tort action on April 24, 2023, pursuant to the applicable New York City Asbestos Litigation (hereinafter NYCAL) procedures.
Plaintiffs allege that defendant Bristol Myers Squibb Company (hereinafter BMS) caused plaintiff's exposure to asbestos and ensuing mesothelioma through his use of its Ammens powder, a talc product, between 1985 and 2023.
On June 5, 2025, BMS moved pursuant to CPLR 3212 for summary judgment dismissing the complaint and all cross claims. In support of its motion, defendant contended that it is entitled to summary judgment on both general and specific causation grounds. Plaintiffs [*2]opposed, BMS replied, and, on January 14, 2026, the court held oral argument on the motion.
Plaintiff alleges that the Ammens powder products that he used contained talc ingredients contaminated with asbestos fibers. Defendant claims that Ammens products do not contain asbestos and that plaintiff's mesothelioma was not caused by his exposure to Ammens products. Defendant also maintains that even if asbestos was present in Ammens products, it was present in quantities insufficient to cause or contribute to plaintiff's mesothelioma.
In support of the motion, BMS relies on, among other things, the expertise of Drs. Michael Graham and Kelly Tuttle, PhD, CIH, while plaintiffs rely on, among other things, the expert reports of Dr. Jacqueline Moline and Mr. Kenneth Garza, CIH. BMS asserts that the evidence and studies that plaintiff submits are not sufficiently comparable to Ammens powder itself, while plaintiff claims they are sufficiently comparable.
BMS submits the expert report of Dr. Graham, which notes that Ammens was used by plaintiff Stuart Linde on himself, two to four times a day from 1985 to 2023, and while diapering his three nieces, his nephew, and his grandson approximately 10 times a day from 2016 to 2019.
BMS further submits the expert report of Dr. Tuttle, who prepared an industrial hygiene and toxicology report. Dr. Tuttle performed mathematical modeling to estimate a hypothetical cumulative amount of asbestos to which plaintiff may have been exposed to as a result of his alleged use of Ammens powder products. In calculating this estimate, Dr. Tuttle utilized studies which included those from Anderson et.al, (2017), Gordon et al. (2014), Miller et al. (2022), and Steffen et al. (2020) (Tuttle report., Exh. B to Tuttle Aff.).
Dr. Tuttle concludes that plaintiff may have been exposed to asbestos from Ammens products in the amount of approximately .00057 f/cc-yr to .0070 f/cc-yr, which Dr. Tuttle opines is indistinguishable from levels of ambient exposure over his lifetime and did not cause or contribute to his illness. In other words, plaintiff's exposure would not have exceeded the cumulative background exposure levels experienced by the general population. 
Dr. Graham incorporates this analysis, together with epidemiological and toxicological studies concerning exposure to cosmetic talc as well as chrysotile dust, anthophyllite fibers, and asbestiform tremolite, and observes that only through heavy exposure do mesotheliomas proliferate, such as in one Vermont talc worker. Dr. Graham concludes that "mineralogical/geological studies support the contention that cosmetic talc should not cause [mesotheliomas]" and that plaintiff's mesothelioma "was not caused or contributed to by any cosmetic talc derived from Ammens" (Graham report at 8).
In opposition, plaintiffs submit the expert report of Dr. Moline who relies on studies conducted by Dr. Steven Compton and Dr. William Longo and concludes that plaintiff's mesothelioma was caused by exposure to asbestos in talcum powder.
Dr. Compton studied ore samples of Italian talc, which determined asbestos was present in those talcs. Dr. Longo, using peer reviewed published materials, conducted analyses of talc powder products and determined that the samples contained asbestos. 
Dr. Moline bases her conclusion in part on the studies of Dr. Longo, whom she observes found tremolite, anthophyllite, and chrysotile in an analysis of 79 of 91 samples of Cashmere Bouquet talcum powder products, some of which was sourced from Italian mines. She further notes that Ammens was also sourced talc from Italian mines.
Dr. Moline's methodology relied on incorporating the full history of Mr. Linde based on the testimony submitted and evaluating how exposure to asbestos might have caused his mesothelioma. Observing that exposures to higher doses of asbestos increases the likelihood and [*3]severity of disease, Dr. Moline relied on exposure studies, which included those of Gordon, et al., Anderson, et al. and Steffen et al., as to the release of asbestos fibers into the breathing zone of cosmetic talc users and bystanders. Dr. Moline concludes that "Mr. Linde's exposures to asbestos from Johnson's Baby Powder, Ammen's, Gold Bond and Dr. Scholl's were above background levels and above levels demonstrated to increase the risk of and cause mesothelioma" (Moline report at 25).
In a supplemental report, Dr. Moline incorporates the lifetime cumulative dose calculation of Mr. Garza of .611 fiber-years/cc from Ammens powder and opines that this exposure was sufficient to cause Mr. Linde's mesothelioma.

 DISCUSSION
Summary judgment is a drastic remedy, to be granted only where the moving party has 'tender[ed] sufficient evidence to demonstrate the absence of any material issues of fact' (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]) and then only if, upon the moving party's meeting of this burden, the non-moving party fails 'to establish the existence of material issues of fact which require a trial of the action' (id.). The moving party's '[f]ailure to make [a] prima facie showing [of entitlement to summary judgment] requires denial of the motion, regardless of the sufficiency of the opposing papers' (id.)

 (Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012] [emphasis omitted].)
On a motion for summary judgment, a defendant must ". . . unequivocally establish that its product could not have contributed to the causation of plaintiff's injury. . . " (Reid v Georgia-Pacific Corp., 212 AD2d 462, 463 [1st Dept 1995].)
To prove causation, a plaintiff "must show not only exposure to the toxin and that the toxin is capable of causing the particular illness alleged, i.e., general causation, but also that plaintiff was exposed to sufficient levels of the toxin to cause the illness, i.e., specific causation" (Fraser v 301-52 Townhouse Corp., 57 AD3d 416, 419 [1st Dept 2008]; see also Nemeth v Brenntag N. Am., 38 NY3d 336, 342-343 [2022], citing Parker v Mobil Oil Corp., 7 NY3d 434, 448 [2006]).
Accordingly, a defendant may establish prima facie entitlement to summary judgment by demonstrating the absence of either general or specific causation (see Dyer v Amchem Prods. Inc., 207 AD3d 408, 410 [1st Dept 2022]); Gushue v Estate of Norman Levy, 118 AD3d 415, 415 [1st Dept 2014]).
"On a motion for summary judgment, facts must be viewed 'in the light most favorable to the non-moving party'" (see Vega at 503 [internal citations omitted]; see also Matter of NY City Asbestos Litig., 33 NY3d 20, 25-26 [2019]). "The function of a court in reviewing such a motion is issue finding, not issue determination, and if any genuine issue of material fact is found to exist, summary judgment must be denied" (see People v Greenberg, 95 AD3d 474, 483 [1st Dept 2012] [internal citation omitted]).
Based on the evidence submitted and oral argument, the court finds that "the parties' competing causation evidence constitute[s] the classic 'battle of the experts'" (Sason v Dykes Lumber Co., 221 AD3d 491, 492 [1st Dept 2023]; see also McWilliams v A.O. Smith Water Prods. Co., 224 AD3d 597 [1st Dept 2024]).
As to general causation, just as how in Parker v Mobil Oil Corp. (7 NY3d 434 [2006] the [*4]toxin at issue was "benzene in gasoline" (Nemeth v Brenntag N. Am.), here, the toxin at issue is asbestos in talc. Dr. Graham relies on, among other things, mineralogical and geological studies to conclude that cosmetic talc should not cause mesotheliomas, whereas Dr. Moline relies on, among other things, exposure and product testing studies to conclude that asbestos in cosmetic talc causes mesotheliomas.
As to specific causation, "a plaintiff must provide a scientific expression linking actual exposure to asbestos to a level known to cause mesothelioma" (Sason [internal quotation marks and emending omitted]). Here, the detailed scientific expressions amount to the cumulative dose calculations analyzed and proffered by both sides
Defendant's experts, Dr. Graham and Dr. Tuttle, conclude that plaintiff's cumulative exposure from Ammens products falls within background levels and therefore could not have caused the disease. Plaintiff's experts, Dr. Moline and CIH Garza, by contrast, calculate a substantially higher cumulative dose and conclude that plaintiff's exposure from defendant's products exceeded levels known to cause mesothelioma.
Based on the foregoing, the court finds that while BMS has demonstrated prima facie entitlement to summary judgment as to general and specific causation, plaintiffs have raised genuine issues of material fact sufficient to defeat the motion. The competing expert analyses present issues of fact that must be resolved by a jury.
In the papers and at oral argument, no party in the action opposed that branch of the motion which seeks dismissal of all cross claims. Accordingly, BMS is entitled to their dismissal.

 CONCLUSION
Accordingly, it is
ORDERED that the motion is granted to the extent all cross claims are dismissed and otherwise denied; and it is further
ORDERED that, within five days of entry, plaintiffs shall serve a copy of this order with notice of entry on defendant Bristol Myers Squibb Company; and it is further
ORDERED that all parties shall appear in Part 13 on Wednesday, April 15, 2026, at 9:30 a.m., for a pretrial conference.
The foregoing constitutes the decision and order of the court.
DATE 3/16/2026ERIC SCHUMACHER, J.S.C.